IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DEVORE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | NO.  04-3030 |

**MEMORANDUM AND ORDER**

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE               September     7       , 2005

      Presently before the Court are cross-motions for summary judgment in this Civil

Rights/Retaliation case.  The Plaintiff, a former Philadelphia police officer who had been fired

for allegedly stealing overtime, originally brought suit against the City, the former police

commissioner, and other police officials, alleging that he was terminated from his position for

having turned in his former partner for stealing a cell phone.  On March 17, 2003, the jury

returned a verdict for in favor of  Devore. (Devore I)   Prior to the Court's ruling on the post-

verdict motions, the parties entered into a settlement agreement, the provisions of which included

agreements by the City to expunge  Devore's record, make pension plan contributions and vest

him in his pension, and refer to him as retired from the Philadelphia Police Department.

      In January, 2004, the Court was informed by the Plaintiff that the City had failed

to comply with the settlement agreement, in that it had not expunged Devore's records, listed him

as retired or vested him in his pension.  As a result, the Court was prepared to vacate the

settlement, reinstate the verdict and rule on the post-verdict motions.

      Before doing so, however, we conducted a final settlement conference in

chambers.  During that conference, and for the first time, the City was amenable to the possibility

of reinstating Devore to the Philadelphia Police Department, an idea they had theretofore

opposed.  Devore stated that he would be satisfied with reinstatement, in lieu of the settlement

promises that the City had admittedly breached.  As a result, on January 28, 2004, we issued an

Order enforcing the settlement.    However, shortly thereafter, the Court was informed that the

City would not reinstate the Plaintiff.  As a result, on February 6, 2004,  we offered  Devore the

option of continuing enforcement of the settlement agreement, or vacating the settlement.  He

chose the latter.  We then proceeded to rule on the still-outstanding, post-verdict motions, remitting the verdict for front pay and calculating attorneys' fees, interest, and costs.

In July, 2004, Devore filed this new suit (Devore II) , alleging that the Defendants' failure to expunge his records and provide him a neutral reference, after agreeing to do so in the original settlement, was a further act of retaliation in violation of § 1983, as well as being motivated by Plaintiff's race, in violation of Title VII and the PHRA.  Devore also alleged that the Defendants' actions constituted an actionable  breach of the settlement agreement, as well as fraud, and a violation of state law regarding the release of expunged information.  As a result of the City's failure to abide by the terms of the settlement agreement, Devore claimed that he lost employment opportunities with Temple University, Beverly Perry, Esquire, and the Pennsylvania State Police, ("the three prospective employers").

On February 11, 2005, the Court granted partial summary judgment to the Defendants, dismissing, among other claims, all contract claims based on breach of the original settlement agreement.  As a result of our Order on that date, only the following claims remain in Devore II: Count I - § 1983 – (but based only on conduct occurring after Devore I); Count III - Title VII and PHRA – (against the City only for Title VII liability, against all defendants for PHRA liability, but, in both cases, based only on conduct occurring after Devore I);  Counts V through VII  - fraud, releasing expunged information, emotional distress and defamation  (against only  the individual defendants acting in their individual capacities);   punitive damages  (against only  the individual defendants acting in their individual capacities).

The Court further ordered that discovery proceed in stages.  The first stage was limited to issues relating to why the three prospective employers failed to hire Devore.  These summary judgment motions are the product of the completion of that stage of discovery.

In the current motions, the Defendants contend that the reason the three prospective employers did not hire Devore had nothing to do with the City's failure to expunge Devore's record or show him as retired.  Thus, even if the Defendants were motivated to breach the settlement agreement by Plaintiff's protected conduct (turning in his former partner, bringing

suit in Devore I, or winning Devore I), or by his race, they still argue that the Plaintiff cannot meet his burden to show causation, i.e., that any action or inaction on the Defendants' part caused the prospective employers to disqualify Devore from employment.

For his part, the Plaintiff contends that the discovery that has been completed establishes that he is entitled to partial summary judgment regarding the Perry employment.  He also argues, for the first time, that certain statements made by the current Police Commissioner, during his deposition in an unrelated case, now establish that the City fraudulently breached an agreement to reinstate Devore to the Philadelphia Police Department, following the aborted re-settlement of the case.

## I.  LEGAL STANDARD

Summary judgment is warranted where the pleadings and discovery, as well as any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  The moving party has the burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When ruling on a summary judgment motion, the Court must construe the evidence and any reasonable inferences drawn from it in favor of the non-moving party.  Tiggs Corp. v. Dow Corning Corp., 822 F.2d 358 , 361 (3d Cir. 1987).

## II. DISCUSSION

### A. § 1983, Title VII and PHRA

The Defendants claim that the completed discovery demonstrates that Plaintiff cannot establish that any action or inaction on their part actually caused him damages.  The Defendants contend that Temple University never even contacted the City about Devore; that the job with Beverly Perry never really existed; and that the Pennsylvania State Police would not have hired the Plaintiff regardless of the information disclosed regarding Plaintiff's employment with the Philadelphia Police Department.  The Plaintiff, on the other hand, argues that the

evidence establishes that Beverly Perry would have hired him, but for the Police Department's disclosures.  He also claims that genuine issues of material fact bar summary judgment on the Pennsylvania State Police position.

### 1. Temple University

In the Amended Complaint, the Plaintiff contends that he was denied employment by Temple University due to the retaliatory conduct of the Defendants.  See Amended Complaint, at ¶ 44, 79.  However, it is now undisputed that Temple never contacted  Devore's former employer.  See Defendants' Exhibit 8 (Letter of Virginia Lederman, Associate University Counsel).  Thus, as Plaintiff now concedes, he cannot establish that any action or inaction on the part of the Defendants played any role in his failure to gain employment with Temple.  We will grant the Defendants' motion with respect to the Temple employment.

### 2. Beverly Perry

With respect to the investigator position with Ms. Perry, the Plaintiff contends that Ms. Perry's deposition testimony establishes that the disclosure by the Philadelphia Police Department of  Devore's termination caused her not to hire  Devore.  The Defendants argue that because there never was a job vacancy for  Devore to fill, he cannot establish any damages.

Ms Perry was a solo practitioner, with a general practice in family law and real estate.  (Perry Dep., at 10).  It is through her real estate work that she met the Plaintiff, handling several deed transfers for him.  (Perry Dep., at 12).  Sometime in 2003, when Devore was in her office, Ms. Perry mentioned that she might be interested in hiring an investigator.  (Perry Dep., at 15).  Devore expressed interest and told her that he had worked for the Police Department. (Perry Dep., at 15-16).  Unfortunately, when Ms. Perry contacted the Philadelphia Police, she was told by an unknown person that Devore had been fired.  (Perry Dep., 22-24).  Based on this information, Ms. Perry sent Devore a letter informing him that she would not hire him.  (Perry Dep., at 21).

If that were the totality of the evidence regarding the Perry position, we would be more impressed with Plaintiff's argument.[1]  However, that is not the end of the story.  During her deposition, Ms. Perry stated that she was merely "considering" hiring an investigator when she spoke with Devore.  (Perry Dep., at 14).  She had never advertised for an investigator.  The topic just came up during idle "chitchat," when she mentioned that she was "interested . . . in maybe hiring a private investigator."  (Perry Dep., at 15-16).  Moreover, contrary to the Plaintiff's Declaration and assertions in his Motion that the position paid $35,000 a year, Ms. Perry stated that she never discussed salary with Devore.  (Perry Dep. 18).  At the deposition, Ms. Perry stated that it would not have been a full-time position.  Rather, "in the event I needed a private investigator I could get to them."  (Perry Dep., at 14).  In fact, Ms. Perry stated that she had no idea how many hours she would need an investigator because it would depend on her caseload.  (Perry Dep., at 18).  Finally, at her deposition, Ms. Perry stated that she never hired an investigator.  Rather, she is in the process of getting out of the practice of law.  Thus she is "phasing out" her law practice.  (Perry Dep., at 11).

Based on this additional deposition testimony, the Defendants argue that they are entitled to judgment regarding the Perry employment because the Plaintiff has failed to establish that any job actually existed, or, if it did, that he has any reasonable basis for damages.  We agree.

Ms. Perry had no definite plans to hire an investigator, and, in fact, never did.  By

---

[1]For purposes of disposition of the summary judgment motions, we will assume that Ms. Perry contacted the Police Department *after* the settlement of the earlier case was reached between the Plaintiff and the City.  In his Declaration,  Devore states that he "was offered and applied for employment with Beverly Perry" on or about May, 2003.  (Devore Declaration, at ¶ 1).  Ms. Perry stated at her deposition that at some point in 2003 she was considering hiring an investigator.  (Perry Dep., at 14).  This Court did not dismiss the earlier case pursuant to Local Rule of Civil Procedure 41.1(b) until June 25, 2003.  However, Ms. Perry's letter informing  Devore that she would not hire him was dated September 29, 2003.  (Perry Dep., at 21-22).  Thus, we will assume that Ms. Perry contacted the Police Department *after* the settlement of the prior case had been reached.

Ms. Perry's admission, the amount of time she would require the services of an investigator was directly linked to her caseload.  Since she decided to leave the practice of law, obviously the need for such services vanished.  The Plaintiff argues that these facts are irrelevant.

> [I]t is of no importance that no other person was hired, or that the position was abandoned due to Ms. Perry [sic] subsequent decision to change careers.  Ms. Perry may have equally decided to stay an attorney and expanded her practice had she hired DeVore.  One never knows what is behind a door that is never opened.

Plaintiff's Response, at 42.

It is commendable that the Plaintiff considers his investigatory skills of such a caliber that his services could have saved Ms. Perry's law practice.  Although, like a contestant on "Let's Make a Deal,"  Devore may have hoped that "today's grand prize was behind Door Number 1," there is absolutely nothing to support his belief.  His case cannot be based on a series of "what ifs." "The Third Circuit has held that mere inferences, conjecture, speculation or suspicion are insufficient to establish a material fact upon which to base a denial of summary judgment." Huggins v. Teamsters Local 312, 585 F.Supp. 148, 150-51 (E.D. Pa. 1984)(citing Robin Construction Co. v. United States, 345 F.2d 610 (3d Cir. 1965)).  There is no evidence upon which a jury could conclude that the Police Department's disclosure caused damages to Devore related to any potential job with Ms. Perry.  Therefore, we will grant the Defendants' Motion with respect to the Perry employment and deny the Plaintiff's motion.[2]

### 3.  Pennsylvania State Police

---

[2]  Plaintiff's motion would have to be denied in any event.  In order to prevail as to any of his alleged lost job opportunities, Devore must not only prove that the Police Department's disclosures cost him the job, but also that those disclosures were part of defendants' continuing retaliation against Plaintiff for his protected activity, or were motivated by his race.  If the jury were to conclude that the disclosures were simply the result of a mistake by someone in the Police Department, Devore could not succeed either on his Section 1983 claim or his Title VII/PHRA discrimination claim.

The Plaintiff also contends that the Defendants sabotaged his candidacy for a position as a Pennsylvania State Trooper.  It is undisputed that the Philadelphia Police Department was contacted and provided information to the Pennsylvania State Police regarding the Plaintiff's employment as a Philadelphia police officer.  Again, the Defendants hang their hats on causation, arguing that Devore had already disclosed the information they provided to the Pennsylvania State Police, ("PSP").   Devore contends that the Defendants engaged in what we'll call "selective disclosure," providing some, but not all, of the information regarding the Plaintiff's employment and separation from the Philadelphia Police Department.  Because we find that a jury could conclude from the evidence presently before the Court that the selective disclosures did cause the PSP to reject  Devore, we will deny the Defendants' motion for summary judgment.

When the PSP notified the Plaintiff that he was disqualified from employment, they cited two reasons – a lack of veracity and a poor credit rating.  See PSP letter, 11/10/03.  In their motion for summary judgment, the Defendants argue that because  Devore had disclosed his employment history in his application and Polygraph Screening Booklet, the information they provided did not cause the PSP to reject Mr. Devore.  Rather, the disclosures they made merely confirmed the information previously provided by  Devore.  In response, the Plaintiff contends that certain omissions in the Police Department's disclosures caused the PSP to question Devore's veracity.  Despite the Defendants' argument that they did nothing but confirm information already disclosed by Devore, the depositions and PSP file on the Plaintiff contain sufficient evidence for a jury to conclude that Defendants' selective disclosures were a motivating factor in causing the PSP to reject his candidacy.

Specifically, the Plaintiff contends that the City failed to inform the PSP that he was wrongfully dismissed from the Philadelphia Police Department; that a jury returned a verdict in his favor on the illegal discharge; and that he had been reinstated and retired from the City.

(Plaintiff's Response, at 11).[3]  In his application,  Devore stated that he had been "discharged from the City of Philadelphia after being wrongfully accused of overtime theft."  (Application, at 15; City-DevPSP00095).  In the Polygraph Screening Booklet,  Devore stated that the reason for his termination was that he was "accused of overtime theft - established in federal Court I was wrongfully accused after reporting corruption."  (Polygraph Screening Booklet, at 5; City-DevPSP00138).  In a follow-up letter,  Devore explained the circumstances surrounding his termination and the subsequent federal trial.  In the letter,  Devore stated, "I then filed a complaint in federal Court.  In which I was ordered to be reinstated and compensated for my pain and suffering. [sic] After the verdict, I was reinstated and then I retired." (Devore Letter, 8/8/03, City-DevPSP00122).

Trooper John Scott conducted the background investigation of  Devore.  As part of his investigation, he contacted the Philadelphia Police Department.  Kathy Nulty in the Personnel/Human Resources department of the Philadelphia Police advised Trooper Scott that Devore was not eligible for rehire and was terminated.  (Scott Dep., at 42-43).  Trooper Scott stated at his deposition that when he received this information from Ms. Nulty he believed Devore was lying about the nature of his separation with the Philadelphia Police Department. (Scott Dep., at 46-47, 78).

Similarly, when Trooper Scott contacted the Internal Affairs Division of the Philadelphia Police, he spoke with Lieutenant Fornier, who provided information from  Devore's IAD file.  (Scott Dep., at 15; City-DevPSP00168-69).  Included in the information was the theft of overtime, with a notation that the charge was sustained.  City-DevPSP00169.  However, Lieutenant Fornier did inform Trooper Scott that  Devore was later found not guilty of the

---

[3]We note that, at no time, did this Court order  Devore's reinstatement.  In fact, in ruling on the post-verdict motions, we specifically did *not* order his reinstatement, electing instead to award him front pay.  <u>Devore v. City of Philadelphia</u>, No. 00-3598, at 20-21, February 20, 2004.

charge.  (Scott Dep., at 51).

What is lacking from both Ms. Nulty's information and Lieutenant Fornier's disclosures were the facts that (1)  at the time they gave information to Trooper Scott,  Devore had successfully brought suit against the City for retaliation, and that (2) the City had entered a settlement agreement with Devore, requiring them to reflect  Devore as retired from the Police Department and to refer any inquiries to the City Solicitor's Office.  So, in the words of Trooper Scott, the two accounts of  Devore's separation from the Philadelphia Police did not "jive." (Scott Dep., at 78).

The City also contends that the discovery that has been completed establishes that, regardless of the information it provided regarding Devore's employment as a Philadelphia police officer, the PSP would still not have hired him.  The Defendants focus on a number of discrepancies in Devore's application: his failure to list all his family members (City-DevPSP00031); his failure to include two years of education at Temple University (City-DevPSP00035); his inability to give full names for three references (City-DevPSP00056); Devore's credit history including the repossession of his car and numerous liens and judgments (City-DevPSP00064-65); numerous failures to respond to traffic citations; his failure to include a prior residence (City-DevPSP00066); and Devore's statement that he had no credit, charge, or loan accounts when, in fact, the credit report revealed thirteen delinquent accounts (City-DevPSP00062-63).  (Defendants' Motion, at 12-13).  The Defendants argue that these factors would have disqualified him from the PSP regardless of the circumstances surrounding his termination from the Philadelphia Police Department.  In support of this argument, the Defendants rely on the deposition testimony from the individuals on the candidate screening panel that rejected  Devore.  See Deposition of Lt. Thomas McDaniel, at 18-21 (rejection based on driving record, admission of sex on duty, forgetting his education at Temple, a prior residence, and his credit history – "the Philly PD issue was more of a side show."); Deposition of

9

Lt. Frank David McCorkle, at 10-17 (dismissal by Philadelphia Police Department was one of many issues disqualifying Devore from PSP); Deposition of Mark Grab, at 70 ("there were enough other issues in this gentleman's packet that even if he had walked on water while with the Philadelphia PD, he would have not gotten through me as a viable cadet in our Academy").

We believe that the ultimate reason for Devore's ineligibility for the PSP remains a material issue of fact, barring summary judgment.  Although the PSP's records support the deficiencies and discrepancies noted above, there is also evidence supporting the Plaintiff's claim that the ultimate reason for his disqualification was his perceived lack of veracity arising from the City's selective disclosure of the circumstances regarding his separation from the police force.

As previously discussed, Trooper Scott stated that the information he received from the Philadelphia Police Department caused him to believe Devore was lying.  See infra, at 9.  Moreover, after the first candidate screening panel reviewed Devore's application package, including Trooper Scott's notes, they asked for more information regarding Devore's reinstatement and Devore's admission that he had sex while on duty.  (City-DevPSP00121, 204).[4]  Thus, we believe a jury could conclude that Devore's other deficiencies noted by the City in their Motion would still not have disqualified Plaintiff from employment with the PSP, had they not also believed that he lied to them about the reasons for his separation from the City.  Otherwise, there would have been no logical reason for the PSP to have requested additional information about Devore's separation.

In response to the request, Trooper Scott obtained a copy of the settlement agreement from Devore and forwarded it to the Human Resources Department of the PSP.  (City-DevPSP00204).  A second candidate screening panel then reviewed Devore's application and

_____

[4]In the polygraph prescreening, Devore admitted having sex while on duty - having sex with his wife on his lunch break.  (City-DevPSP00142).

10

rejected his candidacy, based on, among other things, his lack of veracity.  (City-DevPSP00117).

Again, construing the evidence in the light most favorable to the non-moving party, the evidence

can support an argument that the veracity component of the rejection dealt squarely with the

circumstances surrounding Devore's separation from the Philadelphia Police Department because

that is the additional evidence requested by the original screening panel.[5]  In any event, the

credibility of the PSP personnel who rejected Devore's application must ultimately be made by

the jury, not the Court.

    Finally, with respect to the prospective employment with the PSP, the City argues

that the waiver signed by the Plaintiff, that permitted the City to release his personnel

information to the PSP,  absolves it from all liability.  Employing the totality of the

circumstances test adopted by the Third Circuit in <u>Cirillo v. Arco Chemical Co.</u> 862 F.2d 448 (3d

Cir. 1988), Plaintiff's counsel argues that the factors weigh heavily against the enforceability of

the waiver against the Philadelphia Police Department.

    In <u>Cirillo</u>, the Third Circuit stated that there were a number of factors to be

considered in determining the validity of a release:

> (1) the clarity and specificity of the release language; (2) the
> Plaintiff's education and business experience; (3) the amount of
> time the Plaintiff had for deliberation of the release before signing
> it; (4) whether Plaintiff knew or should have known of [his] rights
> upon execution of the release before signing it; (5) whether

---

[5]The Defendants also argue that the discovery related to an appeals panel that conducted a final review also supports their assertion that Devore would have been disqualified regardless of the issues relating to his separation from the Philadelphia Police Department. Based on the information provided, we again find that the evidence cuts both ways.  <u>See</u> Deposition of Sheryl L. Saxe-Dowling, at 53, 56-57, 115-16 (appeals panel considered sex on duty inappropriate conduct; candidate never addressed credit report; reinstatement appeared to be a misrepresentation); Deposition of Major Richard Stein, at 14 (totality of circumstances disqualified Devore - omissions in application; bad credit history; questions of veracity in application; unresolved questions regarding employment with Philadelphia Police Department); Deposition of Richard Mooney, at 12-14 (employment history and bad credit were "serious deficiencies," although, putting aside anything having to do with the Philadelphia Police Department, Mooney would have disqualified him anyway).

> Plaintiff was encouraged to seek, or in fact received, the benefit of
> counsel; (6) whether there was opportunity for negotiation of the
> terms of the agreement; (7) whether the consideration given in
> exchange for the waiver and accepted by the employee exceeds the
> benefits to which the employee was already entitled to by law; (8)
> the absence of fraud or undue influence.

Cirillo, at 451.[6]   The lynchpin to the validity of the release is whether its execution was knowing

and voluntary.  W.B. v. Matula, 67 F.3d 484, 497 (3d Cir. 1995)(citing Coventry v. United States

Steel Corp., 856 F.2d 514, 523-24 (3d Cir. 1988)).  As you would expect, the Plaintiff and

Defendants in this case disagree about which side the Cirillo factors favor.  Considering the

unique facts and history of this case, we believe many of the factors weigh heavily in  Devore's

favor.

        The Defendants rely heavily on the following language of the "Authorization to Obtain

Information,"

> I acknowledge, by signing this authorization, that I release all parties concerned
> from any and all obligation or liability in the disclosure of the contents of such
> files and the observations or opinions contained therein.

(City-DevPSP00082).  The problem that the Court sees with the Defendants' reliance is the

unique circumstances surrounding this case.  The Authorization begins with the following

language:

> I hereby authorize the release to the **PENNSYLVANIA STATE POLICE**, or its
> representative, any and all personnel and/or personal information about me, which
> is maintained by your institution/agency/company.  This release pertains to
> records maintained in your files with regard to: Employment History, Education,
> Criminal Arrest and/or Conviction, Examination and/or Treatment for Diagnostic,
> Medical, Surgical, Psychological or Psychiatric Reasons, and any other
> information, including character, observations, or opinions.

(City-DevPSP00082).  Pursuant to the "Settlement Agreement" that was in place at the time

---

[6]The Defendants argue that Cirillo's totality of the circumstances test is not
applicable to this case because the release at issue here was executed pre-employment rather than
post-employment, as it was in Cirillo.  See Defendants' Reply, at 9, n.8.  Counsel has cited no
authority for this proposition, nor could the Court find any.

Devore executed this Authorization, the City of Philadelphia should not have had in its possession any personnel records reflecting Devore's discipline.  See Settlement Agreement, at ¶¶ 4, 4(I), 4(ii), 4(iii).   Thus, Devore could have reasonably believed that the details of his separation from the police force would not have been divulged.  Considering these facts, we do not believe that Devore knew or understood the consequences of his signature.

Similarly, we do not believe that the general language of the Authorization encompasses the (well let's face it) bizarre circumstances in this case.  Although we obviously can not expect the PSP to tailor its Authorization for each candidate, we also do not believe the language was sufficient to put Devore on notice that it would shield the Philadelphia Police Department from ignoring a settlement agreement into which it had entered.

Lastly, we note that the Plaintiff was neither given the opportunity to, nor advised to seek the advice of counsel before executing the waiver.  The Defendants argue that such consultation is not required because the Plaintiff did not have a right to employment.  See Defendants' Reply, at 9-10.  Again, considering the long history of this case, such consultation could have at least alerted Devore to the possibility that his entire Internal Affairs file would be divulged.

Although it is clear that there was consideration given for the Authorization, in the form of Devore's consideration for employment with the PSP, we find that the totality of the circumstances does not establish that Devore knowingly waived his rights to sue for retaliation arising from the City's violation of a then-valid settlement agreement.[7]

Therefore, we will deny the Defendants' motion with respect to the Plaintiff's prospective employment with the PSP.

---

[7]The Defendants also argue that the release bars the Plaintiff's claim against the individual defendants for the release of expunged information (Count VI).  Having found the release was not knowingly executed, we decline to enter judgment on this claim, as well.

## B.  Reinstatement with the Philadelphia Police Department

For the first time in this case, the Plaintiff presents a somewhat confusing argument regarding reinstatement. He claims that Commissioner Johnson failed to reinstate him to the police force because the Commissioner had been falsely advised that Devore did not want to be reinstated.  Thus, Devore now contends that he was denied reinstatement based on fraud. See Response, at 2, 49. It is difficult to discern whether Devore is referring to the issue of reinstatement which faced the Court in disposing of the post-trial motions, or an alleged offer of reinstatement made at a later date.[8]  If Devore's argument refers to the former, the claim is barred by collateral estoppel.  The Court ordered front pay in lieu of reinstatement.  That decision was made by the Court, not Commissioner Johnson, after careful consideration of several factors. See Devore v. City of Philadelphia, No. 00-3598, February 20, 2004.  If Devore's fraud claim is based on an alleged offer of reinstatement allegedly made at a later date, see Plaintiff's Response, at 49, we shall dismiss the claim for a number of reasons.

First, the factual allegations underlying the reinstatement/fraud claim were never pleaded in the Amended Complaint.  Although Devore claims generally in the Amended Complaint that he was denied police employment with the City of Philadelphia, see Amended Complaint, at ¶¶ 2, 5, nowhere in the Complaint does the Plaintiff mention a secondary breach regarding reinstatement.  At this late date, we are not going to permit new found legal theories.

Moreover, the entire basis for this argument is a statement Commissioner Johnson made during a deposition in a case unrelated to Devore's.[9]  During that deposition, Devore's counsel questioned the Commissioner about Devore's trial.  Commissioner Johnson maintained that he

---

[8]The alleged offer to which the Plaintiff and his counsel may be referring is probably the one that was discussed during the settlement conference that occurred after the City's breach of the original settlement agreement.  See infra, at 15.

[9]The statement, upon which Devore relies, arose in a deposition of the Police Commissioner, taken in Bucceroni v. City of Philadelphia.  Charles Bucceroni testified during Devore's trial.

did not believe that Devore had been the victim of retaliation.   Then, the following exchange

took place:

> Q.  Okay, Is that – that belief you have the reason why he wasn't reinstated after he prevailed in a jury award?
>
> A.  If I believed him then he never would have been transferred to, I think – in other words, if I didn't believe him or believe other things like that, I don't know why he didn't come back to the Police Department.  That is my understanding, he didn't want to come back.
>
> Q.  What made you think that?
>
> A.  Look, if a person is ordered by the Court to come back, I have no authority to stop them from coming back.  He didn't come back.  I don't know why he didn't come back.

See Bucceroni v. City of Philadelphia, Johnson Dep., at 65-66.  That is the entire exchange

regarding Commissioner Johnson's failure to reinstate Devore.

Keeping in mind that this deposition was taken in a matter completely unrelated to

Devore's case, and the Commissioner was probably not expecting questions regarding Devore's

case, it appears likely that Commissioner Johnson believed that the Court had ordered Devore

reinstated and Devore declined.  Because this is the only "evidence" on which Devore relies to

support his argument that, through some fraud, the Commissioner failed to reinstate him, we

conclude that the claim is completely baseless.

Finally, we note that Devore and his counsel have mischaracterized the circumstances

and statements made during a settlement conference with the Court that occurred after the breach

of the original settlement agreement by the City.  In an effort to re-settle the case, the Court

conducted a settlement conference after being notified of the City's breach.  During that

conference, Devore's possible reinstatement was discussed.  The Plaintiff said he would be

willing to re-settle the case if the City were willing to reinstate him   The Court then asked the

City if they would be willing to reinstate Devore to settle the case.  The City representatives

present at the conference were willing to reinstate Devore, but they made it clear that they were

not the final decision makers.  Unfortunately, these decision makers refused to reinstate the Plaintiff.  Contrary to both Devore's assertion and his counsel's assertion in their Declarations attached to the Response, see Devore Declaration, at ¶ 9; Puricelli Declaration, at ¶ 3, the City never formally offered to reinstate the Plaintiff.

### C.  Defamation and Emotional Distress Claims

The Defendants argue that because there is no evidence that any of the individual Defendants spoke directly to any of the three potential employers, Devore cannot establish the elements for defamation or emotional distress.  See Defendants' Motion for Summary Judgment, at 18-19 n.12.  We believe that the Defendants' attempts to seek judgment on these claims is premature.  At this point, based on the "staged" discovery that the Defendants requested, only limited discovery has been permitted.  Specifically, the Court limited discovery to documents and testimony from the three potential employers to determine what information had been released regarding Devore's employment with the Philadelphia Police Department and what impact his work history had on the decision of each not to hire him.  There has been no discovery regarding why the City failed to expunge Devore's record.  Such discovery is necessary to determine what role, if any, each of the individual Defendants played in the actions or inaction of the Philadelphia Police Department regarding Devore's personnel records.

Similarly, the Defendants argue in a footnote that truth is an absolute defense to defamation and misrepresentation.  See Defendants' Summary Judgment Motion at 25, n.14.  Since neither side has fully briefed the issue, we decline to rule on this argument at this time.

An appropriate Order follows.

16

IN THE UNITED STATES DISTRICT Court
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN DEVORE               :    CIVIL ACTION
                                 :
      v.                   :
                                 :
CITY OF PHILADELPHIA, et al.    :    NO.  04-3030

**O R D E R**

AND NOW, this    7th     day of    September       , 2005, upon consideration of the cross-motions for summary judgment, and the response, and reply filed to each, IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment is DENIED.  IT IS FURTHER ORDERED that the Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  To the extent the Defendants sought judgment on the § 1983, Title VII, and PHRA claims, their Motion is GRANTED with respect to prospective employment with Temple University and Beverly Perry, and DENIED with respect to Plaintiff's prospective employment with the Pennsylvania State Police.  With respect to Plaintiff's previously un-pleaded claim regarding reinstatement to the Philadelphia Police Department, the claim is DISMISSED.  Finally, to the extent the Defendants sought judgment on the defamation, misrepresentation, emotional distress claims, and the state law claim for releasing expunged records, the Defendants' Motion is DENIED without prejudice to refiling once discovery on these issues is completed.

                            BY THE Court:


                            _____
                            JACOB P. HART
                            UNITED STATES MAGISTRATE JUDGE